UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH A. SOWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-CV-0320-CVE-FHM |
| ) | |
| BOURN & KOCH, INC. and ) | |
| JONES & LAMSON MACHINE COMPANY, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court are the following motions: defendant Bourn & Koch, Inc.'s (Bourn & Koch) motion for summary judgment (Dkt. # 25), Bourn & Koch's motions in limine (Dkt. # 38, 39), and plaintiff Joseph A. Sowell's (Sowell) motion in limine (Dkt. # 37). Sowell claims that Bourn & Koch is responsible for his injuries stemming from an allegedly defective lathe, which is a machine used for cutting metal. On December 18, 2017, Sowell sued Bourn & Koch in state court under a strict liability theory and a negligence theory. The case was removed to this Court on June 18, 2018. Bourn & Koch moves for summary judgment on the grounds that (1) it is the improper party for Sowell's strict liability claim, and (2) it owes no duty to the Sowell. Both parties also allege in their motions in limine that the other's expert opinion is inadmissible because it presents legal conclusions.

**I.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986);

Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the Sowell's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**II.**

The following facts are undisputed. On July 1, 2014, Sowell, an employee of Mattsco Supply Co. (Mattsco), was injured when a piece of metal was released from a lathe manufactured and designed by defendant Jones & Lamson Machine Company (Jones & Lamson) and owned by

Mattsco. Dkt. # 25, at 1-2; Dkt. # 2-2, at 1. Sowell suffered permanent damage to his arm. Id. at 2. On February 14, 2002, prior to Sowell's injury, Jones & Lamson filed for relief under Chapter 11 of the Bankruptcy Code. Dkt. # 25, at 3. As a part of its liquidation, Jones & Lamson sold its intellectual and intangible property to BF Acquisitions, LLC (BF Acquisitions). Id. at 3-4. BF Acquisitions in turn sold Jones & Lamson's intellectual and intangible property to Bourn & Koch. Id. at 4; see also Dkt. # 25-2, at 4. Bourn & Koch is an Illinois company that builds machines for a variety of industrial applications. Id. at 2. Bourn & Koch also manufactures and services parts for a number of machines made by other companies, including machines originally made by Jones & Lamson. Id.

The BF Acquisitions to Bourn & Koch transaction was detailed in an Asset Purchase Agreement (APA). Id. The APA includes a choice of law provision specifying Ohio law. Dkt. # 25-2, at 11. There is no indemnification clause or liability clause in the APA. Dkt. # 26, at 4; see Dkt. # 25-2, at 2-13. Bourn & Koch did not assume any liens under the APA. Id. at 6. The APA states that all assets, including intellectual and intangible property as well as certain named tangible assets, "shall be purchased, sold, transferred, conveyed and assigned . . . "AS IS," "WHERE IS" condition with all faults." Id., at 6. The "intangible property" Bourn & Koch acquired consisted of the following:

> all advertising materials, existing customer lists (including, to the extent included in such lists, the names and addressees of current, past and prospective customers of [Jones & Lamson and Fellows, the other company whose assets were acquired]), price lists, supplier lists, drawings, designs, quality control specifications, cost analyses, flow sheets, parts lists, process sheets, instruction manuals, and other records of [BF Acquisitions] which relate exclusively to [Jones & Lamson and Fellows] or relate exclusively to the Purchased Assets (excluding the telephone and facsimile numbers).

The "intellectual property rights" Bourn & Koch acquired consisted of the following:

3

all intellectual and proprietary property of [BF Acquisitions] used or held for use exclusively in [Jones & Lamson and Fellows] as it exists in any jurisdiction, in each case, to the extent owned by, licensed to (to the extent such licenses are assignable), or otherwise used or held for use by [BF Acquisitions], including:

> (1) Computer software and related source codes, objective code, and documentation related thereto used exclusively in the Business [Jones & Lamson and Fellows] ;
>
> (2) trade secrets, including, without limitation, designs, research and development information, technical information, specifications, operating and maintenance manuals, methods, technology, engineering data and drawings, know-how, processes, proprietary data, formulae, mask words, inventions and discoveries, industrial designs and other proprietary rights, whether or not patentable or subject to copyright, mask work, or trade secret protection and whether or not confidential;
>
> . . .
>
> (4)(e) copyrights, including all renewals and extensions thereof, copyright registrations and applications for registration thereof, and non-registered copyrights . . . .

The machine that caused Sowell's injury was excluded from the APA. Dkt. # 25-2. In fact, APA lists the non-intellectual and tangible assets Bourn & Koch acquired, and excluded are any assets owned by Jones & Lamson. Id., at 4, 14-16. Bourn & Koch had no agreement with Mattsco to maintain any Jones & Lamson machines, which would include the machine that caused Sowell's injury.[1] Dkt. # 25, at 4. Indeed, Bourn & Koch neither owned nor serviced any machinery in Sowell's employer's possession.[2] Dkt. # 25, at 4.

Bourn & Koch's website contains statements such as "We are Jones & Lamson" and "As Jones & Lamson," which Bourn & Koch claims relates to its ability to provide parts and service for

---

[1] Admitted in Sowell's response (Dkt. # 26, at 2).

[2] Admitted in Sowell's response (Dkt. # 26, at 2).

Jones & Lamson machines. Dkt. # 27, at 3. Bourn & Koch further claims that it makes these representations for other "legacy companies." Id.

Sowell sued Bourn & Koch, as well as Jones & Lamson, under products liability and negligence theories. Sowell has been unable to effectuate service on Jones & Lamson. As to Bourn & Koch, Sowell argues that because Bourn & Koch acquired most of Jones & Lamson's business, it should be strictly liable for his injury caused by a Jones & Lamson machine. Sowell also argues that Bourn & Koch breached a duty to Sowell by failing to maintain or correct the alleged design defect in the lathe that caused Sowell's injury.

## III.

Sowell hired an expert, John G. Green II, who is a professional engineer. Dkt. # 34-6. Green opined that Bourn & Koch breached a duty to Sowell by failing to maintain or service the lathe that caused Sowell's injury. Id. at 6-25. Green's basis for this opinion is that engineering guidelines and standard industry practices mandate that the original equipment manufacturer, which allegedly became Bourn & Koch when it stepped into the shoes of Jones & Lamson by acquiring its intellectual and intangible property, must maintain and service equipment owned by the customer. Id. at 12. Green also opined that the lathe caused Sowell's injury, and that Sowell followed his limited training while cutting the metal that was ejected from the lathe. Id. at 9-10.

Bourn & Koch hired an expert, Jack E. Hyde, Jr., who is also a professional engineer. Dkt. # 40-1, at 3-23. Hyde reached a conclusion contradictory to Green's. Hyde opined that Bourn & Koch did not breach a duty to Sowell because recognized engineering standards mandate that the customer is responsible for maintenance and for taking precautions as to its machinery. Id. at 22.

5

Both parties filed motions in limine (Dkt. ## 37, 38)[3] to exclude the other's expert opinions to which responses (Dkt. ## 40, 42) and a reply (Dkt. # 45) were filed. Both parties argue that the other's expert opinion contains inadmissible legal conclusions.

The Court finds both expert opinions irrelevant because, as discussed below, the ultimate issue is whether Bourn & Koch assumed Jones & Lamson's future liabilities when it acquired Jones & Lamson's intellectual and intangible property. If it did not, then the Court need not determine whether Bourn & Koch was negligent or whether Jones & Lamson created a design or manufacturing defect when it sold the lathe to Mattsco.[4] Neither party filed an opinion from a mergers and acquisitions expert. Thus, the Court finds that the opinions of Green and Hyde are inadmissible as irrelevant as to the issue before the Court.

## IV.

Sowell argues that Bourn & Koch should be held strictly liable for his injury. Sowell claims that an acquiring company (Bourn & Koch) can assume implied liability under Ohio law, which is the choice of law in the Asset Purchase Agreement. Sowell also claims that Ohio law allows an acquiring company to be held strictly liable when there is a de facto merger. (Because Bourn & Koch acquired Jones & Lamson's intellectual and intangible property only, Sowell does not argue

---

[3] Bourn & Koch also filed a motion in limine (Dkt. # 39) seeking to exclude evidence of Sowell's lost wages and testimony that might inflame the sympathy of the jury, and Sowell responded (Dkt. # 43). However, if the Court finds that the Bourn & Koch was not negligent or liable in products liability, the motion in limine is moot.

[4] Assuming, arguendo, that both parties' expert opinions were relevant, much of the opinions are legal conclusions, such as Bourn & Koch's alleged duty to Sowell, and would be inadmissible. The Tenth Circuit has been clear that expert testimony that reaches the ultimate legal conclusion of the case is inadmissible. Specht v. Jensen, 853 F.2d 805, 808-09 (10th Cir. 1988).

that an actual merger took place.)  Sowell also argues that Bourn & Koch breached a duty owed to Sowell by not maintaining or repairing the alleged design defect in the lathe that caused Sowell's injury, and was therefore negligent.

As to the strict liability and negligence claims,[5] "[b]ecause this is a diversity case, [the Court] rel[ies] on the substantive law of Oklahoma and appl[ies] federal procedural law." Ahrens v. Ford Motor Co., 340 F.3d 1142, 1147 (10th Cir. 2003).  Thus, the Court "appl[ies] Oklahoma products liability law." Id.  As an initial matter, it appears that Sowell's negligence claim is intertwined with his products liability claim.  Sowell does not cite any cases holding that an acquiring company owes a duty to customers of the acquired company when the acquiring company purchases intellectual and intangible property only.  Rather, Sowell cites products liability cases only.  See Dkt. # 26, at 8-9.

The Court is not persuaded that Bourn & Koch owed a duty to Sowell merely based on Sowell's assertion of a duty.  No authority for this assertion is provided by Sowell.  Moreover, the Tenth Circuit, applying Oklahoma law, has been reluctant to hold that even the seller, much less the successor, owes a continuing duty to warn of a defective product post-sale.  Id.  Thus, the Court finds that Bourn & Koch did not owe Sowell a duty and accordingly turns to the strict products liability issue.

Sowell argues that Bourn & Koch is strictly liable for Sowell's injuries based on a products liability theory.  Dkt. # 26, at 4.  Sowell's theory is that Bourn & Koch should be held liable for a design defect in the lathe.  Id.  Sowell argues that Bourn & Koch assumed liability under the Asset Purchase Agreement between Bourn & Koch and BF Acquisitions.  Id. at 4-5.  As stated above,

---

[5]  The choice of law in the APA governs the contract between Bourn & Koch and BF Acquisitions.  It does not govern these tort claims.

there is no provision in the APA covering liability or indemnification. Sowell's argument, then, is that Bourn & Koch impliedly assumed Jones & Lamson's future liabilities. Because Sowell's argument rests on how the APA is construed, the Court applies the APA's choice of law clause, which provides for Ohio law.[6]

Ohio law generally does not recognize a cause of action against a successor company that acquires another company's assets. Flaugher v. Cone Automatic Machine Co., 507 N.E. 2d 331, 334 (Ohio 1987); Welco Ind., Inc. v. Applied Cos., 617 N.E. 2d 1129, 1130 (Ohio 1993). There are four exceptions to this rule: (1) where the successor company expressly or impliedly agrees to assume the liabilities of the seller; (2) where the transaction is a de facto merger; (4) where the buyer is a mere continuation of the seller; and (3) where the transaction was fraudulent. Flaugher, 507 N.E. 2d at 334.

Sowell argues that two of these exceptions are applicable. Sowell's primary argument is that the first exception applies, namely, that Bourn & Koch impliedly assumed Jones & Lamson's liabilities, including future liabilities. Dkt. # 26, at 5. The reason for this, Sowell argues, is that a sophisticated company like Bourn & Koch would have thought of liability when drafting the APA. Id. at 6. Sowell also argues that the "AS IS" clause in the APA referring to the lathe's design, and the clause excluding liens, are language consistent with implied assumption of liability. Id. at 6-7.

---

[6] Bourn & Koch concedes that the Court should apply Ohio law to construe the APA. In any event, Oklahoma requires the same elements for a buyer of corporate assets to be held strictly liable. See Pulis v. United States Elec. Tool, 561 P.2d 86 (Okla. 1977) ("Exceptions to the rule [that a transfer of assets does not make the acquiring company liable for the transferor's obligations] are: (1) [w]here there is an agreement to assume such debts or liabilities[;] (2) [w]here the circumstances surrounding the transaction warrant a finding that there was a consolidation or merger of the corporations[;] (3) that the transaction was fraudulent in fact[;] or (4) that the purchasing corporation was a mere continuation of the selling company.")

8

Bourn & Koch responds that the plain language of the agreement excludes any assets not included, including the lathe that injured Sowell. Dkt. # 27, at 5. Bourn & Koch also argues that Sowell has not presented evidence of implied assumption of liability. Id. at 7. Finally, Bourn & Koch argues that it never had a relationship with Jones & Lamson; rather, it purchased Jones & Lamson's intellectual and intangible property from BF Acquisitions. Id.

Construing the record in the light most favorable to Sowell, the Court finds that Bourn & Koch did not impliedly assume liability for Jones & Lamson's assets. Sowell presents no evidence that would lead the Court to conclude that Bourn & Koch impliedly assumed liabilities under the APA. Further, Bourn & Koch had no relationship with Mattsco, the company that owned the machine that caused Sowell's injury. In fact, Bourn & Koch produced an email in response to a subpoena, in which Mattsco stated that it has no records of any contact or correspondence with Bourn & Koch. Dkt. # 25-5. If the Court were to accept Sowell's implied assumption of liability argument, it would lead to an unacceptable result: every company that fails to include an express liability clause would impliedly assume liability. This result is contrary to well-established law, which recognizes a distinction between express and implied assumption of liability. Restatement (Third) of Torts: Products Liability § 12 cmt. d (1998) ("[A]ssumption of products liability is not implied by the successor's assumption of specific duties with regard to product service or replacement.") (emphasis added); See also Harris vv. T.I., Inc., 413 S.E. 2d 605, 608-09 (Va. 1992) (successor company not liable for product liabilities where it included a contract liability clause but did not include an express product liability clause in the contract); Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc., 90 S.W. 3d 46, 50 (Ky. 2002) (successor company not liable when it did not include a product liability clause in the contract).

9

Sowell cites Cintas Corp. V. Great Lakes Best One Tire & Svs., LLC, 2018-Ohio-2456, 2018 WL 3117477 (Ohio. Ct. App. 2018), for the proposition that Ohio law recognizes an implied liability cause of action. But the court in that case held that the buyer corporation impliedly assumed liability because the agreement in question included an express, prior-liabilities clause. Id. at 3. There is no express liability clause in the APA. Absent an express liability clause, implied conduct, or a relationship with Mattsco or other conduct suggesting implied assumption of liability, the Court finds that the first exception in Flaugher is inapplicable.

Next, Sowell argues that the second Flaugher exception applies. Sowell points to Bourn & Koch's website, which states "We are Jones & Lamson" and "As Jones & Lamson." Dkt. # 27 at 3. Sowell also argues that, because Bourn & Koch purchased all of Jones & Lamson's assets except for the corporate offices and "a few machines," Bourn & Koch is now Jones & Lamson. Bourn & Koch responds that it makes such assertions for many legacy companies, not just Jones & Lamson; but it does not claim actual ownership. Bourn & Koch also points to the fact that it never acquired the machine that caused Sowell's injury, and it also failed to acquire other Jones & Lamson assets.

The Court is persuaded that Bourn & Koch has not held itself out to be Jones & Lamson; there has been no de facto merger. The best evidence of this is the APA itself. For Bourn & Koch to persuasively represent itself as Jones & Lamson, it would have had to acquire Jones & Lamson's brick and mortar office, as well as its inventory. Bourn & Koch has done neither of these; Bourn & Koch purchased Jones & Lamson's intellectual and intangible property only from BF Acquisitions.

The Court finds and concludes that Bourn & Koch is entitled to summary judgment on Sowell's negligence and products liability claims. Therefore, the motions in limine are moot.

As to defendant Jones & Lamson, pursuant to the Federal Rules of Civil Procedure, Sowell must serve Jones & Lamson "within 90 days after the filing of the complaint . . . ." Fed. R. Civ. P. 4(m). Sowell filed his complaint on December 18, 2017. To date, Sowell has not filed a return of service showing service on Jones & Lamson. Sowell has, therefore, failed to timely serve Jones & Lamson under Fed. R. Civ. P. 4(m).

**IT IS THEREFORE ORDERED** that defendant Bourn & Koch, Inc.'s motion for summary judgment (Dkt. # 25) is **granted**, and judgment shall be entered for Bourn & Koch, Inc.

**IT IS FURTHER ORDERED** that the motions in limine (Dkt. ## 37, 38, 39) are **moot**.

**IT IS FURTHER ORDERED** that within fourteen (14) days of the date of this order, Sowell shall file a return of service or show good cause for failure to serve defendant Jones & Lamson, or the case will be dismissed without prejudice against defendant Jones & Lamson.

**DATED** this 15th day of August, 2019.

*(signature)*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE